IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ALICE GUTIERREZ, | § | |
| | § | |
| Plaintiff | § | |
| | § | Civil Action No. 7:03-CV-0246-BH(R) |
| v. | § | |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the provisions of Title 28, United States Code, Section 636(c), and an Order of the Court in implementation thereof, subject cause has been transferred to the undersigned United States Magistrate Judge. Before the Court are *Brief for Plaintiff*, filed March 26, 2004, and *Defendant's Appeal Brief*, filed March 26, 2004. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned determines that the decision of the Commissioner should be **AFFIRMED**.

### I.   BACKGROUND[1]

**A.   Procedural History**

Alice Gutierrez ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. On October 31, 1998, Plaintiff protectively filed an application for disability benefits effective beginning July 21, 1998, under Title XVI of the Social Security Act. (Tr. at 48-77.) Plaintiff claimed she was disabled due to lumbar disk disease and inflammatory neuropathy. (Tr. at 59.) Plaintiff's application was denied initially and

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

upon reconsideration. (Tr. at 28-32, 37-39.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 40-41.). A hearing, at which Plaintiff personally appeared and testified, was held on May 17, 2000. (Tr. at 268-288.) The ALJ issued his decision on June 28, 2000, finding that the Plaintiff was not disabled as defined in the Social Security Act because she could still perform a significant number of jobs in the national economy. (Tr. at 17.) The Appeals Council denied Plaintiff's request for review on October 31, 2003. (Tr. at 4-7.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

### B. *Factual History*

1. Age, Work Experience, & Education

Plaintiff was born on January 30, 1962, and has a 9th grade education. (Tr. at 48, 64.) Her past relevant work experience was as a sandwich maker in a factory in 1984. (Tr. at 64.)

2. Medical Evidence[2]

Plaintiff received treatment at the Family Health Center from August 22, 1995, through June 30, 1999. (Tr. at 200-211.) The treatment notes indicate that Plaintiff repeatedly sought relief from pain in her back and joints, which was diagnosed as resulting from rheumatoid arthritis, nonspecific arthritis, or fibrositis. *Id.* During a visit on June 27, 1997, Plaintiff denied having any depressed moods or crying spells and reported that her energy level was normal. (Tr. at 208.) On July 10, 1997, Plaintiff denied any abnormal mood or any problems at home. (Tr. at 207.)

A neurological examination was performed on October 27, 1997, by D.R. Bartel,

---

[2]The issues presented in this case are limited to whether substantial evidence supports the ALJ's finding as to mental limitations imposed on Plaintiff's RFC. Accordingly, the Court's recitation of the medical evidence pertaining to Plaintiff's physical limitations will be abbreviated.

M.D.. (Tr. at 98-100.) Plaintiff complained of numbness in her hands and feet, arthritic symptoms in her joints, swelling and stiffness in her fingers, and fatigue and weakness. *Id.* at 98. With regard to Plaintiff's mental status, Dr. Bartel noted that Plaintiff denied any psychiatric problems and that her judgment and insight were good. (Tr. at 98-99.) Dr. Bartel found Plaintiff's concentration span and memory skills to be intact for both visual and verbal tasks. (Tr. at 99.) Dr. Bartel's impression was that Plaintiff had rheumatoid arthritis, carpal tunnel syndrome, and anxiety disorder. *Id.*

In the following months, a series of psychiatric evaluations and residual capacity assessments were conducted. On December 12, 1998, Wassal A. Lewis, Ph. D., M.D. conducted a psychiatric evaluation. (Tr. at 110-16.) Plaintiff reported that she was disabled due to back and joint pain but denied any mental impairment. (Tr. at 111.) At the time of the examination, Plaintiff was experiencing emotional strain due to her son's legal and behavioral problems. (Tr. at 113.) Plaintiff's affect was animated and her mood was somewhat anxious. (Tr. at 114.) She was alert and completely oriented and cooperative. *Id.* Plaintiff reported difficulty sleeping, but attributed this to pain. *Id.* She had crying spells and feelings of helplessness, hopelessness, and uselessness, as well as sadness over the previous two years, which she attributed to her son's troubles. *Id.* Her insight was at least fair and her judgment was at least good. *Id.* Dr. Lewis's presumptive diagnoses included: adjustment disorder with depressed mood, chronic; anxiety disorder due to arthritis, carpal tunnel syndrome, chronic pain syndrome; and pain disorder associated with psychological factors and general medical condition. (Tr. at 115.) Plaintiff's prognosis was thought to be at least fair. *Id.*

On January 21, 1999, a Mental Residual Functional Capacity Assessment was prepared by a non-examining physician, Abdelmesih Boulos, M.D. (Tr. at 195-99.) Dr.

3

Boulos found Plaintiff to be moderately limited in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without a reasonable number and length of rest periods; ability to interact appropriately with the general public; and ability to respond appropriately to changes in the work setting. (Tr. at 195-96.) In explaining and elaborating on his findings, Dr. Boulos stated that "Claimant retains the ability to understand and follow simple instructions, to adequately interact with coworkers and supervisors, and to adjust to routine working environments." (Tr. at 197.) Dr. Boulos also noted in a Psychiatric Review Technique that Plaintiff's "symptoms are credible but not disabling." (Tr. at 118.)

On March 22, 2000, Plaintiff went to the emergency room for pain and vomiting. (Tr. at 212.) On March 24, 2000, Plaintiff went to Family Health Center for follow-up where she was examined by A. Szczerba, M.D. (Tr. at 201-202.) Dr. Szczerba noted that Plaintiff had increased anxiety over the previous week because her son and husband had left to visit family in Mexico. (Tr. at 202.) Plaintiff's symptoms included difficulty sleeping, lack of energy, and lack of appetite. *Id.* Plaintiff was prescribed an anti-depressant, Serzone. (Tr. at 201.)

      3.     <u>Hearing Testimony</u>

At the hearing on May 17, 2000, the ALJ heard testimony from Plaintiff and Clifton King, Jr., a Vocational Expert ("VE"). (Tr. at 268-88.) Plaintiff was represented by counsel at the hearing. (Tr. at 269.) Plaintiff testified that she was 38 years old and had a 9th grade education. (Tr. at 269-70.) She testified that she had not worked since 1995, and that her income was derived from child support payments, rental income, and food stamps. (Tr. at

4

270-71.) Plaintiff stated that she had problems with her fingers, feet, legs, and back. (Tr. at 272.) Her fingers became numb and swollen, she felt stinging sensations on her feet when walking, in addition to sharp pains in her legs, and pain in her back due to two ruptured disks. (Tr. at 272.) Plaintiff stated that the swelling increased when she used her hands frequently and that they were swollen most of the time. (Tr. at 274, 273.) She stated that she had not yet had surgery on the ruptured discs because she was afraid. (Tr. at 272-73.) She also testified to pain in her neck and shoulder. (Tr. at 273.)

In describing a typical day, Plaintiff testified that she woke up about seven, but it would take her half an hour to an hour to get up. (Tr. at 274.) She would then get her son out of bed to go to school, after which she would lay back down. *Id.* A friend helped her clean her house or go on any errands. *Id.* Plaintiff stated that she could sweep a little, but that it took her a long time, and that she no longer cooked often. *Id.* Plaintiff testified that she had pain from sitting down, lying down, and standing too long, so she walked around to avoid becoming stiff. (Tr. at 274-75.) When asked if she had any good days, Plaintiff testified that she hardly had any because she had gone through a major depression and that she cried most of the time. (Tr. at 275.) She further stated that she had recently attended a mental health clinic and had spoken to a psychiatrist. (Tr. at 275-76.) Plaintiff also complained about increased nervousness. (Tr. at 276.)

The ALJ asked Plaintiff what would prevent her from performing a job that did not require any heavy lifting. (Tr. at 278.) Plaintiff answered that her fingers swelled and became numb. *Id.* The ALJ then asked if she attributed this to her rheumatoid arthritis, and Plaintiff responded that she did. *Id.* Plaintiff then testified that she was currently not taking any medication for her arthritis, and that none of her past medication had helped much. (Tr. at 278-279.)

5

The VE testified that Plaintiff's past work was as a food assembler, with a light strength factor and at the low-range of semi-skilled. (Tr. at 279.) The ALJ then posed a hypothetical question to the VE, assuming an individual who is 38 years old and who could perform light work, but could not do repetitive fingering with either hand. (Tr. at 279-80.) The ALJ also limited the individual to understanding short and simple instructions, with one and two-step repetitive tasks, and also included a moderate limitation for adaptation. (Tr. at 280.) The VE testified that although such an individual could not perform Plaintiff's past work, such a person could perform the job of a cleaner, patch worker, and handkerchief presser, all of which were nationally and locally available jobs. (Tr. at 280-81.) The ALJ then posed a second hypothetical asking the VE to give full weight to the limitations to which the Plaintiff testified: constant and severe pain in her joints, back, shoulder, and neck; inability to remain at a workstation for an eight-hour day; a need to be in a resting or reclining position two to three hours a day to address chronic pain and fatigue; and symptoms of depression that could affect concentration. (Tr. at 281.) The VE testified that he did not believe that there was any work available that allowed for an individual with those limitations. *Id.*

Plaintiff's counsel asked the VE to assume an individual similar to the one outlined by the ALJ, who was moderately limited in her ability to understand and remember detailed instruction; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruption from psychological symptoms; perform a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; and respond to changes in the work setting. (Tr. at 282-83.)[3]

---

[3]Counsel explained that she was referring to Exhibit 8-F, which is the Mental Residual Functional Capacity Assessment completed by Dr. Boulos, (Tr. at 195-99), in formulating her question. (Tr. at 283.)

The VE answered that a need to take numerous rest periods would eventually affect an individual's ability to maintain the jobs that he had proffered. *Id.* However, he did not believe that the other limitations would affect an individual's ability to perform the jobs suggested. *Id.* Plaintiff's counsel then asked the VE to assume an individual whose concentration, production and pace were reduced by ten percent due to physical limitations and another ten percent by psychological limitations, for a total of a twenty percent reduction. (Tr. at 284.) The VE stated that an individual who could only stay on task eighty percent of the day would probably not be able to maintain a job. *Id.*

### C.   *Summary of ALJ's Findings*

The ALJ issued his findings on June 28, 2000. (Tr. at 9.) He found that Plaintiff had not engaged in substantial gainful activity since filing her application for Supplemental Security Income on October 31, 1998. (Tr. at 13.) He also found that Plaintiff had a history of joint pain/rheumatoid arthritis and lumbar disc disease, and that such impairments were "severe" within the meaning of the regulations. *Id.* The ALJ also noted that Plaintiff had been found to have a depressive disorder related to her physical complaints. *Id.* However, the ALJ noted that there were no objective medical findings detailing long term mental health treatment and stated that "[i]t appears that the claimant is not currently taking any anti-depressant medications." *Id.*

After considering all the evidence, the ALJ concluded that Plaintiff did not have an impairment that met or equaled the criteria of any of those listed in Appendix 1 of the Regulations. (Tr. at 15.) However, the ALJ did find Plaintiff to have medically determinable impairments that required him to continue to the "sequential evaluation process." *Id.* The ALJ discussed Plaintiff's testimony at the hearing and concluded that "in light of the objective medical findings . . . the [Plaintiff's] subjective allegations are not

7

credible to the extent alleged." (Tr. at 16.) The ALJ also stated that "[t]he objective medical records overall . . . do not reflect a level of treatment consistent with a disabling impairment." *Id.* The ALJ noted that Plaintiff had not required surgery, no long term functional limitations were outlined by any physician, and that the overall record did not reflect a level of treatment consistent with a disabling impairment. *Id.*

The ALJ concluded that Plaintiff had the residual functional capacity to "perform the exertional demands of light work," although she was limited by not being able to "perform repetitive fingering with her hands." *Id.* The ALJ also found that Plaintiff had "some situational depression related to her physical impairments. However, she has not required long term mental health treatment and is not currently taking any mental health medications." *Id.* Accordingly, the ALJ determined that "[she] experiences no more than slight limitation in her activities of daily living or social functioning and seldom experiences deficiencies of concentration, persistence or pace." *Id.* The ALJ stated that Plaintiff was able to remember and understand very short simple instructions and carry out simple, routine tasks. *Id.* She had moderate limitations in her ability to adapt to work situations and required a consistent work pattern. *Id.* In reaching his opinion, the ALJ stated that he had considered and generally agreed with the state agency medical consultants' conclusions. *Id.*

The ALJ further concluded that Plaintiff would be unable to perform her past relevant work as a food assembler. (Tr. 16-17.) He found that she could work as a cleaner/housekeeper with 135,000 jobs in the national economy, as a patch worker with 177,000 jobs in the national economy, and as a presser with 8,000 jobs in the national economy. (Tr. at 17.) The ALJ therefore determined that Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## III. ANALYSIS

### A. *Legal Standards*

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

#### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.

1992).

The Commissioner utilizes the following sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).  Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

B.   *Issues for Review*

Plaintiff presents the following issues for review:

(1)   The ALJ erred in assessing Plaintiff's mental Residual Functional Capacity by erroneously rejecting/ignoring the opinion of a state agency medical consultant;

(2)   The ALJ erred in assessing Plaintiff's mental Residual Functional Capacity by failing to note Plaintiff's rating on the Global Assessment of Functioning scale; and

(3)   The ALJ erred in assessing Plaintiff's mental Residual Functional Capacity by erroneously finding that Plaintiff was not taking mental health medications.

C.   *Issue One: Opinions of the State Agency Medical Consultant*

Plaintiff contends that the ALJ erred "by ignoring some of the state agency consultants' opinions, and failing to explain why he gave some of those opinions considerable weight but gave no apparent weight to others" in violation of Social Security Ruling 96-6p. (Pl. Br. at 16.) Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," they must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). An ALJ may not ignore the opinions of State agency medical consultants and must explain the weight given those opinions in their decisions. SSR 96-6p.

> In setting forth the mental limitations in Plaintiff's RFC, the ALJ stated
>
> [D]ue to mental impairments, the claimant experiences no more than slight limitation in her activities of daily living or social functioning and seldom experiences deficiencies of concentration, persistence or pace. She has never had an episode of deterioration or decompensation in work or work-like settings. The claimant is able to remember and understand very short simple instructions and can carry out simple, routine tasks. She is able to perform simple, unskilled 1-2 step repetitive tasks. She has moderate limitations in her ability to adapt to work situations and requires a consistent work pattern. In reaching this conclusion, the Administrative Law Judge had considered and generally agrees with the opinions of the State agency medical consultants....

11

(Tr. at 16.) Although the ALJ stated that he considered the opinions of the state agency physicians, Plaintiff asserts that the ALJ erred in ignoring some of the opinions expressed by Dr. Boulos, a non-examining state agency physician. (Pl. Br. at 16.) In particular, in the Mental Residual Functional Capacity Assessment he prepared, Dr. Boulos found Plaintiff to be moderately limited in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without a reasonable number and length of rest periods; ability to interact appropriately with the general public; and ability to respond appropriately to changes in the work setting. (Tr. at 195-96.) Plaintiff asserts that the ALJ's failure to refer to each of these conclusions and to either adopt them or to explain their rejections was error.

However, where substantial evidence supports the ALJ's decision, "the failure to consider every single opinion or statement of an SAMC in an administrative decision that otherwise discusses the findings of said SAMC may . . . constitute harmless error." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 516-17 (S.D. Tex. 2003) (citing *Mitchell v. Barnhart*, 2003 WL 1565467, at *1 (4th Cir. Mar. 27, 2003) (per curiam); *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Mirza v. Barnhart*, 2003 WL 21058542, at *4 n.3 (N.D. Ill. May 9, 2003)). Even where the record demonstrates procedural improprieties, a court will not remand unless the substantial rights of a party have been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is appropriate only if the improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.* at 335.

In this case, it is notable that in explaining and elaborating on his findings, Dr. Boulos stated that "Claimant retains the ability to understand and follow simple instructions, to adequately interact with coworkers and supervisors, and to adjust to routine working environments." (Tr. at 197.) He also stated that Plaintiff's "symptoms are credible but not disabling." (Tr. at 118.) Additionally, although Plaintiff asserts that she should have been found disabled due to an limitation on the ability to maintain a workweek or work week and/or a need for numerous rest periods, she fails to point to any other evidence in the record supporting such a limitation. (Pl. Br. at 16.) In fact, the Court has reviewed the record and finds that none of Plaintiff's treating physicians indicate that she is limited in this capacity.

For these reasons, the Court concludes that even if the ALJ's failure to address each limitation set forth by Dr. Boulos was erroneous, such error was harmless because substantial evidence supports his decision.

### D.    *Issue Two:  The Global Assessment of Functioning Scale*

Plaintiff further contends that the ALJ failed to mention Dr. Lewis' Global Assessment of Functioning ("GAF") rating of 45 in his assessment, which would be "hardly supportive of the ALJ's mental RFC finding" and that this constitutes reversible error. (Pl. Br. at 17, citing Tr. at 115.) As noted above, ALJs must consider findings by state agency psychological consultants as opinion evidence and must explain the weight given those opinions. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(I); SSR 96-6p. However, the failure to reference every opinion by a consultant may constitute harmless error. *Alejandro*, 291 F. Supp. 2d at 517.

In setting forth his presumptive diagnoses, Dr. Lewis found that Plaintiff had a GAF of 45. (Tr. at 115.) In addressing Dr. Lewis's report, the ALJ noted his diagnoses of "adjustment disorder with depressed mood, chronic; anxiety disorder due to arthritis; and

13

chronic pain syndrome." (Tr. at 14.) The ALJ did not reference the GAF score. *Id.* Such a failure does constitute error. However, a "GAF score is not a rating typically relied upon with respect to assessing an individuals's RFC under the Act. While the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence." *Alvarez v. Barnhart*, 2002 WL 31466411, *8 (W.D. Tex. Oct. 2, 2002).

In this case, it is important to note the definition of the GAF score at issue and to consider it in light of the actual findings made by Dr. Lewis in his examination of Plaintiff. According to the Diagnostic and Statistical Manual of Mental Disorders, the Global Assessment of Functioning Scale is used to report a clinician's judgment of the individual's overall level of functioning. GAF scores of 41 to 50 reflect "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM : IV (4th ed., text revision 2000). During Dr. Lewis's examination of Plaintiff, she denied any mental disability. (Tr. at 111.) Plaintiff "denied homicidal thoughts or suicidal thoughts . . . [and] denied compulsive behavior." (Tr. at 114.) Plaintiff did experience crying spells and feelings of hopelessness which she attributed to current difficulties with her children. *Id.* Dr. Lewis noted that Plaintiff's "insight was thought to be at least fair and her judgment was thought to be at least good." *Id.* In his final prognosis Dr. Lewis stated that "[t]his patient's prognosis is thought to be at least fair." (Tr. at 115.) Such a finding contradicts a GAF indicating "serious" symptoms.

In contrast to the GAF score, an individual's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Id.* The record indicates that in setting forth Plaintiff's mental RFC, the ALJ considered all the relevant medical evidence, as well as Plaintiff's hearing testimony, and that such evidence provides substantial support for the ALJ's RFC determination. For these reasons, the Court concludes that any error in failing to reference the GAF was harmless and does not cast into doubt the existence of substantial evidence to support the ALJ's decision. *See Alejandro*, 291 F. Supp. 2d at 516-17; *Morris*, 864 F.2d at 335.

### E.     *Issue Three: Mental Health Medication*

Plaintiff claims that the ALJ erred by stating that Plaintiff was not currently taking any mental health medications because she was in fact taking Serzone, an antidepressant, prior to the hearing on May 17, 2000. (Pl. Br. at 17, citing Tr. at 16.) Plaintiff claims that she provided the ALJ with a medication list nearly a month prior to the hearing listing Serzone as one of her medications, and she also submitted a progress note from one of her doctors prescribing Serzone. (Pl. Br. at 16, citing Tr. at 86 and at 201.)

In support of his determination of Plaintiff's RFC, the ALJ stated that Plaintiff "[was] not currently taking any mental health medications." (Tr. at 16.) This statement was in error. Plaintiff stated in a medication list completed on April 18, 2000, that she was taking Serzone "for nerves." (Tr. at 86.) This medication was prescribed by Dr. Szczerba, Plaintiff's physician, on March 24, 2000. (Tr. at 201.) Dr. Szczerba's treatment notes indicate that Plaintiff's primary complaint was gastritis and that she was also diagnosed with

15

anxiety. *Id.*

However, as noted above, "procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Remand is not appropriate unless the Plaintiff can show that she was prejudiced by the alleged error. *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). In this case, there is no other evidence in the record that Plaintiff sought treatment for any mental health issues. Additionally, Dr. Szczerba is not a psychologist or psychiatrist and Plaintiff's primary reason for seeking treatment with Dr. Szczerba was not to obtain mental health care. Plaintiff claimed disability from July 1998, yet the only evidence of treatment for mental health problems before the ALJ was a one-time prescription written by a general practitioner on April 21, 2000, less than one month before the hearing. Considering the entire record, the Court concludes that Plaintiff was not prejudiced by the ALJ's error and that substantial evidence supports the ALJ's finding as to Plaintiff's mental RFC.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled for purposes of the Social Security Act. Accordingly, the final decision of the Commissioner is wholly **AFFIRMED**.

**SO ORDERED,** this 30th day of November, 2005.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE